# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Adam J. Gilbert,<br><br>      Plaintiff,<br>  v.<br><br>Wells Fargo Bank, N.A.,<br><br>      Defendant. | Case No. 2:23-cv-04448-RMG<br><br>**ORDER AND OPINION** |

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 6). Plaintiff opposed the motion (Dkt. No. 7), and Wells Fargo replied. (Dkt. No. 10). For the reasons set forth below, the Court grants in part and denies in part Wells Fargo's motion to dismiss.

## I.    Background

This case arises from a wire fraud scheme.[1] On May 22, 2023, a scammer, pretending to be a Wells Fargo agent, advised Plaintiff to wire the funds in his Wells Fargo account to a different bank account because Plaintiff's Wells Fargo account had been compromised. (Dkt. No. 1-1 at ¶ 5). Plaintiff complied by initiating three wire transfers from his Wells Fargo account, totaling $22,900.00. (*Id.* at ¶ 6).

"Within 10 minutes of the third transfer, Plaintiff became suspicious and called Wells Fargo's fraud reporting number." (*Id.* at ¶ 7). According to Plaintiff, "Wells Fargo stated that it could – and would – freeze or hold funds – and confirmed that [Plaintiff's funds] were currently in an account controlled and held by Wells Fargo." (*Id.* at ¶ 8) (emphasis removed). Thereafter, Wells Fargo investigated but ultimately notified Plaintiff that the funds would not be returned by

---

[1] The facts are drawn from Plaintiff's complaint. (Dkt. No. 1-1).

1

the receiving bank. (*Id.* at ¶¶ 9, 15). Plaintiff alleges, however, that Wells Fargo was the receiving bank, and Wells Fargo's statement was "false and misleading, and designed to make Plaintiff abandon his efforts to recover a valid claim, in a now typical pattern for Wells Fargo." (*Id.* at ¶¶ 16-17).

Based on these allegations, Plaintiff brought an action against Wells Fargo, alleging (1) violation of Uniform Commercial Code (UCC) Article 4A; (2) improper payment/debit of account; (3) negligence; (4) violation of the South Carolina Unfair Trade Practices Act (SCUTPA); and (5) money had and received. (Dkt. No. 1-1). Wells Fargo moved to dismiss each claim. (Dkt. No. 6). Plaintiff opposed the motion to dismiss (Dkt. No. 7), and Wells Fargo replied. (Dkt. No. 10). This matter is ripe for the Court's review.

II.     **Legal Standard**

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). While the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### III.  Discussion

####  A.  Uniform Commercial Code Article 4A

#####   1.  S.C. Code Ann. § 36-4A-201 *et seq.*

A bank will not be liable for loss when a payment order is either *authorized* by the sender or *verified* pursuant to an agreed-upon security procedure. S.C. Code Ann. § 36-4A-202. A payment order is "the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency." § 36-4A-202(a). A payment order is verified when the payment order is accepted in compliance with a commercially reasonable security procedure that has been agreed to by the bank and its customer. § 36-4A-202(b). As another court has explained, "whether a payment order is authorized is a threshold inquiry; if the order was authorized in fact by the person who is the designated signatory for the customer, the outcome does not thereafter depend on whether the bank also verified the payment order pursuant to commercially reasonable procedures." *Harborview Cap. Partners, LLC v. Cross River Bank*, 600 F. Supp. 3d 485, 495 (D.N.J. 2022).

To state a claim for a refund, Plaintiff must allege either that he did not authorize the payment order or that the payment order was not verified pursuant to an agreed-upon, commercially reasonable security procedure. Plaintiff's own allegations establish that he did, in fact, authorize the payment order. Plaintiff alleges that he "complied" with the instructions of the fraudster and "initiated three electronic transfers from this Wells Fargo account." (Dkt. No. 1-1 at ¶ 6). "The customer who, sadly, has been the victim of a third-party fraud cannot shift the loss to a bank that faithfully executed the customer's instructions to implement a transfer." *Harborview*, 600 F. Supp. 3d at 495-96.

Furthermore, Plaintiff does not allege that Wells Fargo failed to comply with an agreed-upon, commercially reasonable security procedure. Stated differently, Plaintiff does not allege

3

that he and Wells Fargo ever "agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure." § 36-4A-202(b). Accordingly, the Court grants Wells Fargo's motion to dismiss Plaintiff's § 36-4A-201 *et seq.* claim.

2. Misdescription of beneficiary – S.C. Code Ann. § 36-4A-207

The *modus operandi* of fraudulently induced wire transfers is a payment order that pairs the name of the defrauded party (for example, Mr. Gilbert) with the fraudster's bank account number, *i.e.*, the payment order misdescribes the beneficiary. This is effective because wire transfers are largely automated, and the automated process relies solely on the account number provided on the payment order.

Section 36-4A-207(b) applies to circumstances in which the payment order misdescribes the beneficiary. Under § 36-4A-207(b), a receiving bank is liable for loss in only two circumstances. First, the receiving bank is liable for loss when it *knows* that the name and account number on the payment order refer to different people. Under § 36-4A-202(b), "know" means "actual knowledge." Second, the receiving bank is liable for loss when it pays the person identified on the payment order by relying on the name instead of the account number.

Plaintiff alleges that Wells Fargo is liable for his loss because "Wells Fargo as the recipient bank, also knew or should have known that the name and account number it received referred to different persons." (Dkt. No. 1-1 at ¶ 36). Plaintiff alleges that after he "initiated three electronic transfers from his Wells Fargo account," within ten minutes of initiating the last transfer, he "became suspicious and called Wells Fargo's fraud reporting number." (*Id.* at ¶¶ 6-7). At some point after this call, Plaintiff alleges that "Wells Fargo stated that it could – and would – freeze or hold funds – and confirmed that they were currently in an account controlled and held by Wells Fargo." (*Id.* at ¶ 8) (emphasis removed).

4

The Court finds that Plaintiff has alleged sufficient factual matter, accepted as true, to state a plausible claim under § 36-4A-207.  Plaintiff alleges that he contacted Wells Fargo shortly after initiating the last wire transfer, informed Wells Fargo of the fraud, and was told that the funds would be either held or frozen.  Accepting the allegations as true, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that the complaint plausibly alleges that Wells Fargo knew that the payment order misdescribed the beneficiary.  Accordingly, the Court denies Wells Fargo's motion to dismiss Plaintiff's § 36-4A-207 claim.

3. Cancellation and amendment of payment order – S.C. Code Ann. § 36-4A-211

"[A] communication by the sender canceling or amending a payment order is effective to cancel or amend the order if notice of the communication is received at a time and in a manner affording the receiving bank a reasonable opportunity to act on the communication before the bank accepts the payment order."  § 36-4A-211(b).  "After a payment order has been accepted, cancellation or amendment of the order is not effective *unless the receiving bank agrees* or a funds-transfer system rule allows cancellation or amendment without agreement of the bank."  § 36-4A-211(c) (emphasis added).

Plaintiff alleges that after he "initiated three electronic transfers from his Wells Fargo account," within ten minutes of initiating the last transfer, he "became suspicious and called Wells Fargo's fraud reporting number."  (Dkt. No. 1-1 at ¶¶ 6-7).  At some point after this call, Plaintiff alleges that "Wells Fargo stated that it could – and would – freeze or hold funds – and confirmed that they were currently in an account controlled and held by Wells Fargo."  (*Id.* at ¶ 8) (emphasis removed).  From this sequence of events, Plaintiff alleges that "Wells Fargo as the recipient bank also received notice of the cancellation of the transfer. . . but failed to timely act, resulting in loss."  (*Id.* at ¶ 37).

The Court finds that Plaintiff has plausibly alleged a claim under § 36-4A-211. Putting aside whether Plaintiff contacted the receiving bank before the payment order was accepted, as required by § 36-4A-211(b), Plaintiff has alleged that Wells Fargo agreed to freeze or hold the stolen funds. (*Id.* at ¶ 8). At this stage, Plaintiff need only plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The Court finds that Plaintiff has pled facts, accepted as true, to support the proposition that Wells Fargo agreed to cancel or amend the payment order. Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's § 36-4A-211 claim.

B. Plaintiff's remaining claims for negligence, money had and received, improper payment/debit of account, and violation of SCUTPA are dismissed.

Before considering Plaintiff's remaining claims, the Court notes that UCC Article 4A is "intended to be the exclusive means of determining the rights, duties, and liabilities of the affected parties in any situation covered by particular provisions of the Article." § 36-4A-102 cmt. The drafters of UCC Article 4A made a deliberate decision "to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks, and establish limits on liability, rather than to rely on broadly stated, flexible principles." *Id.* Accordingly, "resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in" Article 4A, as adopted by South Carolina. *Id.*

1. Plaintiff's claims for negligence (count three) and money had and received (count five)

Plaintiff asserted a claim for negligence. (Dkt. No. 1-1 at ¶¶ 46-57). Wells Fargo moved to dismiss this claim, arguing that it is preempted by UCC Article 4A. (Dkt. No. 6 at 7). Plaintiff responded that he "is withdrawing the claim for negligence at this time." (Dkt. No. 7 at 10). Accordingly, the Court grants Wells Fargo's motion to dismiss Plaintiff's negligence claim.

6

Plaintiff asserted a claim for money had and received. (Dkt. No. 1-1 at ¶¶ 67-70). Wells Fargo moved to dismiss this claim, arguing that it is displaced by Article 4A. (Dkt. No. 6 at 10). Plaintiff responded that he has "elected to abandon this cause of action and does not oppose Defendant's motion as to this cause of action." (Dkt. No. 7 at 12). Accordingly, the Court grants Wells Fargo's motion to dismiss Plaintiff's claim for money had and received.

2. Plaintiff's claim for improper payment/debit of account (count two)

Plaintiff alleges that "[the] parties were bound by a contractual relationship requiring Defendant to debit Plaintiff's account or initiate payment therefrom according to the instructions of the Plaintiff." (Dkt. No. 1-1 at ¶ 42). Plaintiff alleges that he performed the contract as required, but Wells Fargo's conduct "constitute improper payment or debiting of an account" and is a breach of the Parties' contract. (*Id.* at ¶¶ 43-44).

"The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach." *Branche Builders, Inc. v. Coggins*, 386 S.C. 43, 48 (Ct. App. 2009). The Court finds that Plaintiff does not plausibly allege that Wells Fargo breached any contract the Parties may have. Plaintiff alleges that "Defendant breached the contract" by failing "to debit Plaintiff's account or initiate payments therefrom according to the instructions of the Plaintiff." (Dkt. No. 1-1 at ¶¶ 42-44).

Plaintiff's claim fails because he does not cite or even refer to any provision of the alleged contract. Without any references to the actual contract, Plaintiff's claim for improper payment/debit of account based on a breach of contract amounts to a threadbare recitation of the elements and conclusory statements. To be sure, Plaintiff's response in opposition does begin to refer to a contract for the first time. Nevertheless, a Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint—not a response in opposition. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's claim for improper payment/debit of account.

3.  Plaintiff's claim under the South Carolina Unfair Trade Practices Act (count four)

Plaintiff alleges that Wells Fargo violated SCUTPA. (Dkt. No. 1-1 at ¶¶ 58-66). First, Plaintiff alleges that "Defendant took and retains to date, transfer fees associated with the fraudulent transaction, despite its knowledge of its fraud." (*Id.* at ¶ 60). Next, Plaintiff alleges that Wells Fargo "has a pattern and practice of misinforming and misleading commercial victims of fraud similar to that which occurred in this case by making false statements in its 'investigation results' letters, in an effort to mislead them into abandoning valid claims." (*Id.* at ¶ 61). Plaintiff alleges that these actions "constitute unfair and deceptive acts" with "a real and substantial potential for repetition and affect the public interest, as is reflected in the numerous suits filed for the same or similar fraudulent activity." (*Id.* at ¶¶ 64-65).

To state a claim under SCUTPA, a plaintiff must allege "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Ameristone Tile, LLC v. Ceramic Consulting Corp.*, 966 F. Supp. 2d 604, 621 (D.S.C. 2013). Under South Carolina law, "unfair or deceptive acts have an adverse impact upon the [public] if those acts have the potential for repetition." *Id.* "Potential for repetition can be demonstrated by either 'showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence' or 'showing the company's procedures created a potential for repetition of the unfair and deceptive acts.'" *Id.* (citing *Bessinger v. Food Lion, Inc.*, 305 F. Supp. 2d 574, 581 (D.S.C. 2003)). Conduct, however, "that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim." *Id.*

The Court finds that Plaintiff has not plausibly alleged an adverse impact on the public interest. Plaintiff argues that the existence of other lawsuits against Wells Fargo "demonstrates a

pattern and practice that can be repeated." (Dkt. No. 7 at 11). The Court finds that this is not sufficient to plausibly allege a potential for repetition, which requires either "'showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence' or 'showing the company's procedures created a potential for repetition of the unfair and deceptive acts.'" *Id.* (citing *Bessinger*, 305 F. Supp. 2d at 581). *See Ethox Chem., LLC v. Coca-Cola Co.*, No. 6:12-CV-01682-TMC, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013) ("Even if Coca–Cola has been accused of similar past violations, which the court is not assuming without additional factual allegations, allegations of accusations are not the same as allegations of specific similar past acts."). Wells Fargo is a national bank, and in our new digital world, where fraudster's prowl, one would expect defrauded customers to attempt to recoup their losses from a bank. Nevertheless, a claim against a party is not probative of wrongdoing. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's claim for violation of SCUTPA.

## IV.   Conclusion

Based on the reasons set forth above, the Court grants in part and denies in part Wells Fargo's motion to dismiss. (Dkt. No. 6). The Court grants Wells Fargo's motion to dismiss Plaintiff's claims under S.C. Code Ann. § 36-4A-201 *et seq.* and for improper payment/debit of account; negligence; violation of SCUPTA; and money had and received. The Court denies Wells Fargo's motion to dismiss Plaintiff's claims under S.C. Code Ann. § 36-4A-207 and § 36-4A-211.

**AND IT IS SO ORDERED**

s/ Richard Mark Gergel
Richard M. Gergel
United States District Judge

October 17, 2023
Charleston, South Carolina